## STATE v. SYLVESTER WOODARD.

(Filed 11 December, 1940.)

**Homicide § 25—Evidence held sufficient to be submitted to the jury on question of defendant's guilt of murder in the first degree.**

The evidence considered in the light most favorable to the State tended to show that defendant, a man about 30 years of age, had been associating with deceased, a woman about 25 years of age, that for approximately twelve months prior to the homicide, deceased had been associating with another man and had been attempting to break off relations with defendant, and that defendant had been warning the other man to stop associating with her, that on the day of the homicide, defendant, riding a bicycle, encountered deceased on the street, that he attempted to force her to get on the bicycle with him, that he finally put a pistol against her neck, demanding that she stop hollering and threatening to kill her, that repeatedly when he would get her on the bicycle and start off she would stop the bicycle by sticking her foot in the wheel, that after several stops he shot her, that he shot her again as she was falling, and shot her a third time while she was lying on her back, inflicting fatal wounds, and that at least fifteen minutes elapsed from the time of the encounter until the fatal shooting, and that after the homicide defendant stated that he had killed her because she was trying to break off with him for another man and that he had told her he would kill her rather than let another man have her. *Held:* The evidence tends to show motive for the killing and that it was done with premeditation and deliberation, and is amply sufficient to overrule defendant's motion for judgment as of nonsuit on the capital charge.

APPEAL by defendant from *Carr, J.,* at the August Term, 1940, of WAYNE. No error.

Criminal prosecution on bill of indictment charging the defendant with the murder of one Lillie Townsend.

There was a verdict of guilty of murder in the first degree. From judgment of death pronounced thereon defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*
*Hugh Dortch for defendant, appellant.*

BARNHILL, J. At the conclusion of the evidence for the State the defendant moved for judgment as of nonsuit on the count and charge of murder in the first degree. This motion was overruled and the defendant excepted. The defendant then rested without offering testimony and renewed his motion, which was again overruled and defendant excepted. These exceptions are the subject matter of the defendant's only assignment of error. A careful perusal of the testimony leads us to the conclusion that this assignment is without merit.

The evidence considered in the light most favorable to the State tends to establish the following facts: (1) The defendant, a man about 30 years of age, had been associating with the deceased, a woman of about 25 years of age, for three or four years. (2) Shortly prior to the homicide deceased had been associating with another man and wanted to "call it quits" with the defendant for the other party, and the defendant had been warning the other man to "stop messing with her." This situation had existed for approximately twelve months. (3) On the morning preceding the homicide defendant saw the deceased on the back of Teet's (the other man) luggage carrier. (4) On the day of the homicide the defendant and the deceased were seen on Center Street in the city of Goldsboro. The defendant was on a bicycle. "The woman was trying to get around the wheel to go towards town and the defendant would not turn her loose. He was sitting on the wheel and she was screaming trying to get her arm loose from his so that she could go towards town. When he had her by the arm and she was screaming, she was saying, 'Don't let him kill me.' He kept trying to get her on the wheel and couldn't and he told her he was going to kill her if she did not. She kept screaming and hollering like she was scared to death, she was only begging for help. When he could not keep her on the wheel he pulled a pistol out of his pocket. He put his arm around her and the pistol against her neck, and told her if she put her foot in the wheel he was going to kill her before he left where she was. He had the barrel of the pistol on her neck, with the barrel against her. He would ask her to quit hollering and was still telling her he was going to kill her, and finally he got her on the wheel and whenever he would start off she would stick her foot in the wheel and stop it. He put her on the cross-bar and would go a short distance before it would stop. Whenever he would

start going along she would kick her foot in the wheel and holler 'Oh my foot, you have killed me,' then the wheel would stop when she had her foot in it. She kept begging him to let her alone as she had to go up town. He would twist her arm to get her on the wheel and she would be half on and half off, and they headed in the opposite direction from town. He finally got her on the wheel and they started off again and went about seventy yards when she stopped the wheel again. Then he told her the next time you stick your foot in the wheel I am going to kill you before we go any further. They stopped again and he pushed her and that is when he shot her the first time. When she left the wheel it looked as though her foot was twisted and she turned with her side to him. He was still on the wheel next to the sidewalk. When first fired she kind of wobbled and fell, it looked to me like she was falling when he shot her again, she fell flat on her back. He shot her the third time when she was on her back. She begged him not to shoot from the beginning. After he shot her the last time he got on his wheel and went up North Center Street . . . it was at least fifteen minutes from the time they were on the corner arguing until he shot her down the street." The deceased died almost immediately. (5) After the homicide the defendant stated, when asked why he did it, that he was worried as he had been going with this girl and she had broke him and wanted to call it quits for another man and if she could not do him any good that she would not have anyone else. He said he told her, "If you are not going to be any good to me you are not going to be to anyone else," and then shot.

This evidence tends to show a motive for the killing and that it was done with premeditation and deliberation. It is sufficient to repel defendant's motion for judgment as of nonsuit and to sustain the verdict of the jury.

We have examined with care the record as a whole and find no merit in the defendant's exceptive assignment of error or in the other exceptions entered at the trial but not brought forward.

No error.